\_\_\_\_ FILED  \_\_\_\_ ENTERED
\_\_\_\_ LODGED  \_\_\_\_ RECEIVED

Magistrate Judge James P. Donohue

AUG 22 2018

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY

# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

BABAK REZAPOUR,

Defendant.

CASE NO. **MJ18-383**

COMPLAINT for VIOLATION
18 U.S.C. § 2244(b)

BEFORE United States Magistrate Judge James P. Donohue, Seattle, Washington. The undersigned complainant being duly sworn states:

### Count One

### (Abusive Sexual Contact in Special Aircraft Jurisdiction)

On or about January 10, 2018, while aboard Norwegian Airlines Flight #DY7131, an aircraft in flight in the special aircraft jurisdiction of the United States, on a nonstop flight from London Gatwick International Airport in England to Seattle-Tacoma International Airport in SeaTac, Washington, in the Western District of Washington, the defendant, BABAK REZAPOUR, did, with an intent to abuse, harass, humiliate, and degrade VICTIM and to arouse and gratify the sexual desire of any person, knowingly and intentionally, engage in sexual contact with VICTIM without VICTIM's permission; specifically, BABAK REZAPOUR intentionally touched without permission VICTIM's thigh, breast, and vagina.

Complaint: *United States v. Rezapour* - 1

All in violation of Title 18, United States Code, Section 2244(b) and Title 49, United States Code, Section 46506(1)

**The undersigned, Caryn Highley, complainant being duly sworn states:**

1. I am a Special Agent (SA) assigned to the Seattle Division of the Federal Bureau of Investigation (FBI) and am a member of the Seattle Safe Streets Task Force (SSSTF), which focuses on gang-related violent crimes, as well as Organized Crime Drug Enforcement Task Force matters. I am a law enforcement officer currently authorized to investigate and enforce violations of federal criminal statutes, including those found in Title 18 and 21 of the United States Code. I have received basic law enforcement training at the 20-week FBI Academy. This training focused on various aspects of conducting criminal enterprise investigations such as interviewing and interrogation techniques, physical and electronic surveillance, development and management of confidential human sources, and arrest planning and execution. Additionally, I have received training related to Special Maritime and Territorial Jurisdiction and Special Aircraft Jurisdiction matters.

2. As an SA in the Seattle Division, I have participated in a wide variety of criminal investigations, to include those pertaining to violent crimes, illegal drug sales and distribution, as well as gang-related criminal activities. I have also worked and consulted with numerous law enforcement officers experienced in drug investigations and received narcotics identification training. I have assisted in a Title III investigation, during which I became familiar with the way drug traffickers use telephones, often cellular telephones, to conduct their unlawful operations. I am also familiar with how drug traffickers possess and use firearms in connection with their criminal activities.

3. Because this Complaint is submitted for the limited purpose of establishing probable cause in support of an arrest warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that BABAK

REZAPOUR committed the offense of Abusive Sexual Contact in the Special Aircraft Jurisdiction of the United States, in violation of Title 18, United States Code, Section 2244(b) and Title 49, United States Code, Section 46506(1).

4. This Complaint is based upon my own personal observations, my training and experience, discussions with other agents and officers who are familiar with this investigation, and information collected during this investigation through, among other things, witness interviews, law enforcement investigative reports, public records, and scientific testing.

## PROBABLE CAUSE

5. On January 10, 2018, REZAPOUR and VICTIM boarded Norwegian Airlines flight DY7131, departing from London Gatwick International Airport in Horley, England and arriving at Seattle-Tacoma International Airport in SeaTac, Washington. At the outset of the flight, VICTIM was seated in seat 35D and REZAPOUR was seated in seat 36F. REZAPOUR was assigned seat 29J but moved to seat 36F after the row appeared vacant.

6. Approximately one hour after departure, VICTIM was asked by flight attendants to move seats after another passenger became ill. VICTIM was reseated to a seat 36D in a row that had three seats and was located in the middle of the aircraft. Before VICTIM was reseated no other passengers except REZAPOUR were seated in this row. Once reseated, VICTIM and REZAPOUR each sat in an aisle seat, 36D and 36F, respectively, with one empty chair between them. VICTIM did not know REZAPOUR and had never met him prior to flight DY7131.

7. After the plane experienced turbulence, VICTIM took prescribed anti-nausea/anti-anxiety medication and drank a glass of white wine. Later in the flight, REZAPOUR ordered VICTIM a second glass of white wine. After drinking this second glass, VICTIM described feeling hazy and had difficulty remaining awake during the flight.

8. After falling asleep, VICTIM awoke to find REZAPOUR seated next to her, rubbing and massaging her right thigh. Upon awakening, REZAPOUR immediately moved back to his aisle seat and began reaching under the seat in front of him, as if to look for something.

9. REZAPOUR suggested that VICTIM place her head in the empty middle seat so she could sleep. When VICTIM began to move towards the middle seat, REZAPOUR extended his leg into the chair, as if to suggest that VICTIM place her head in his lap. Startled by REZAPOUR's behavior, VICTIM sat upright and walked towards the restroom in the rear of the plane to avoid REZAPOUR.

10. Upon returning to her seat, VICTIM sat sideways in her chair, bent her knees, and placed her feet up on the middle seat in order to create a physical barrier between VICTIM and REZAPOUR. VICTIM believed that by placing her feet and lower legs in the seat, REZAPOUR would be unable to move closer or continue rubbing her thighs.

11. After VICTIM again fell asleep, she awoke to find REZAPOUR's legs wrapped around the outside of hers. VICTIM found REZAPOUR holding her bare heel and rubbing it on his genital area. VICTIM could feel that REZAPOUR had an erection. VICTIM tried to remove her foot, but REZAPOUR pulled her foot back towards his genitals. After a brief struggle, REZAPOUR handed VICTIM her missing sock.

12. Despite fighting to stay awake, VICTIM again fell asleep, awakening to find REZAPOUR lying face down in her lap. When VICTIM asked REZAPOUR what he was doing, REZAPOUR responded that he was "just relaxing" and returned to his aisle seat.

13. Another passenger, A.B., confirmed that at some point during the flight, A.B. saw REZAPOUR laying across the seats in his row, covered in a blue blanket. A second passenger, C.W., noticed during the flight that REZAPOUR had moved to the seat next to VICTIM and appeared to either be laying his head on VICTIM's shoulder or was very close to VICTIM.

14. Later during the flight, VICTIM felt REZAPOUR's hand on her shirt, awakening to find REZAPOUR squeezing her breast and nipple underneath VICTIM's bra. After VICTIM awakened, REZAPOUR again abruptly moved back to his aisle seat.

15. Afraid, VICTIM attempted to write a note on her cellphone, asking for help. VICTIM intended to hand the cellphone to a male passenger seated behind her but was unable to stay awake long enough to complete the note.

16. After falling asleep, VICTIM again awakened to find REZAPOUR's fingers underneath her underwear, touching her vagina. VICTIM was wearing jeans and a leotard, and REZAPOUR would have had to unbutton her clothing in order to touch her vaginal area. When REZAPOUR noticed that VICTIM was awake, he immediately pulled his hand away and placed it on VICTIM's leg. VICTIM then realized that REZAPOUR had taken her limp hand and wrapped it around his exposed erect penis. REZAPOUR had placed his black and white checkered jacket over his penis and VICTIM's hand to conceal the activity from other passengers. VICTIM pulled her hand away and went toward the back of the aircraft. Upon standing, VICTIM noticed her pants had been unbuttoned and fully unzipped.

17. Flight crew member I.T. noticed VICTIM crouched down in a fetal position in the rear of the plane, between the galley and the airplane's bathrooms. Upset, VICTIM told I.T. that REZAPOUR had touched her sexually without her consent. I.T. notified a senior crew member, who came to the rear of the aircraft and asked VICTIM to describe what had occurred. Visibly shaken and crying, VICTIM was unable to repeat her statement. At that point, crew members reseated VICTIM in the front of the aircraft, away from REZAPOUR.

18. Crew member S.N. asked REZAPOUR if he knew what happened to VICTIM. REZAPOUR seemed surprised by S.N.'s question and asked "why, where is she, is she gone?" REZAPOUR asked S.N. if he could go apologize to VICTIM. When asked why an apology was needed, REZAPOUR stated that he might have accidentally kicked VICTIM with his leg while he was laying down.

Complaint: *United States v. Rezapour* - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

19. Later in the flight, crew member I.T. asked REZAPOUR for his boarding pass so she could obtain his name. REZAPOUR provided the pass to I.T., appearing calm and not worried about the incident.

20. Before leaving the plane, VICTIM wrote a note on her cellphone, stating among other things "I'm afraid I won't remember this: - Woke up to him rubbing/touching my thighs and back, up[on] awakening it stop[p]ed . . . . – he bought me wine, gave it to me after waking me up, ima fried something might be in it? . . . . –fall asleep, upset n waking again because of a weird feeling near my v[a]gina . . . ."

21. VICTIM stated that she had taken her prescribed anti-nausea and anti-anxiety medication with wine in the past and never experienced being as drowsy or hazy as she had during this flight.

22. After the aircraft landed in Seattle Tacoma International Airport, law enforcement was notified. Upon landing, law enforcement boarded the aircraft and escorted VICTIM and REZAPOUR off the flight. Law enforcement gathered REZAPOUR's identification information, including his U.S. passport and travel documents, and interviewed him. After being advised of his *Miranda* rights, REZAPOUR denied engaging in any unwanted physical contact with VICTIM.

23. Law enforcement also interviewed VICTIM, who stated that she did not give REZAPOUR permission nor welcome the physical contact that occurred during the flight. Officers gathered VICTIM's clothing and submitted it for DNA testing. According to the laboratory report, REZAPOUR's DNA was found in the inside front of VICTIM's panties.

24. On April 12, 2018, REZAPOUR was interviewed by law enforcement at his residence. After being advised of his *Miranda* rights, REZAPOUR denied touching VICTIM sexually during the flight, claiming that there was no reason his DNA would be found inside her underwear.

## CONCLUSION

25. Based on the foregoing, I respectfully submit there is probable cause to believe that BABAK REZAPOUR has committed the offense of Abusive Sexual Contact within the Special Aircraft Jurisdiction, in violation of Title 18, United States Code, Section 2244(b) and Title 49, United States Code, Section 46506(1).

Caryn Highley, Complainant
Special Agent
Federal Bureau of Investigation

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the defendant committed the offenses set forth in the Complaint.

DATED this 22 day of August, 2018.

JAMES P. DONOHUE
United States Magistrate Judge

Complaint: *United States v. Rezapour* - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970